# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 13, 2010

No. 08-10997

Lyle W. Cayce
Clerk

STEPHEN ALLARD,

Plaintiff-Appellant

versus

QUINLAN PEST CONTROL COMPANY, INC.,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Texas
No. 3:05-CV-584

Before DAVIS, SMITH and HAYNES, Circuit Judges.

PER CURIAM:[*]

The district court dismissed Stephen Allard's *in forma pauperis* suit as malicious. We reverse and remand.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 08-10997

I.

There is a complicated procedural history involving two lawsuits. Allard was incarcerated at the Hunt County Jail ("HCJ") from July 2000 until October 2001. In August 2002, he brought a lawsuit ("the 2002 lawsuit") *in forma pauperis* ("IFP") against Curtis Neal, an HCJ jailer, and Don Anderson, the sheriff of Greenville, Texas, alleging injuries from unsanitary and unsafe conditions at the jail. Among his complaints, Allard alleged that exterminators sprayed pesticides on the floor where he and other prisoners slept.

Allard claims he was diagnosed with a thyroid condition in March 2003. In the 2002 lawsuit and the present action, he attributed that injury to pesticide exposure.[1]

The district court dismissed the 2002 lawsuit for failure to exhaust administrative remedies. We reversed in part, holding that Allard could continue to seek relief for injuries discovered after his transfer from HCJ, including the thyroid condition. *Allard v. Anderson* ("*Allard I*"), 260 F. App'x 711 (5th Cir. 2007), *cert. denied*, 129 S. Ct. 128 (2008).

In February 2005, Allard moved to amend his pleadings in the 2002 lawsuit to "conform to new evidence." By that time, however, the case was pending on appeal, so the district court lacked jurisdiction. *Id.* at 716 (citing *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (per curiam); *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 578 (5th Cir. 1996)). Allard's motion, moreover, did not identify new evidence or new parties to the suit; rather, it reiterated his allegations about the conditions at HCJ. The district court denied the motion as both untimely and frivolous and directed the clerk not to accept future filings from Allard without leave of court.

---

[1] The first mention of the alleged thyroid injury appears to have come in Allard's appellate brief in the 2002 lawsuit. We recognized the allegation as part of his complaint on that appeal. *See Allard v. Anderson* ("*Allard I*"), 260 F. App'x 711, 712 (5th Cir. 2007).

2

No. 08-10997

On March 24, 2005, Allard filed a second suit ("the 2005 lawsuit")––the instant action––naming the same two defendants as in the 2002 lawsuit, Neal and Anderson, and Michael Vice and Randy White, two other HCJ jailers, and Quinlan Pest Control Company, Inc. ("Quinlan"),[2] the company that had sprayed pesticides at the jail. All the defendants in the 2005 lawsuit except for Quinlan were voluntarily dismissed.

The district court dismissed the 2005 lawsuit, just as it had done with the 2002 lawsuit, for failure to exhaust administrative remedies. No process was served on the defendants. Allard appealed, and for a time both lawsuits were pending before this court. After we reversed in part and affirmed in part the 2002 lawsuit, *Allard I*, 260 F. App'x 711, Allard petitioned for certiorari with respect to the portions of our decision affirming the district court. The district court administratively closed the case pending the Supreme Court's review of the petition.[3]

While the 2002 lawsuit was pending before the Supreme Court, we reversed in part the dismissal of the 2005 lawsuit. *Allard v. Quinlon Pest Control Co.* ("*Allard II*"), 283 F. App'x 308 (5th Cir. 2008). On remand, the district court again dismissed the 2005 lawsuit *sua sponte*, finding it duplicative and therefore malicious under the IFP screening provisions at 28 U.S.C. § 1915(e)(2)(B)(i). Allard appeals that dismissal. Quinlan still has not been served with process.

II.

We review a dismissal under § 1915(e)(2)(B)(i) for abuse of discretion. *Brewster v. Dretke*, 587 F.3d 764, 767 (5th Cir. 2009), *cert. denied*, 78 U.S.L.W. 3701 (U.S. June 1, 2010). Under § 1915(e)(2)(B)(i), the court may screen and dis-

---

[2] The original complaint misspelled the company's name as "Quinlon."

[3] The Supreme Court eventually denied certiorari. On remand, the district court ordered the parties to mediation, and the case was settled.

miss *sua sponte* any IFP suit that it deems "frivolous or malicious." An action is malicious for purposes of § 1915(e)(2)(B)(i) if it duplicates the allegations of another pending federal lawsuit by the same plaintiff. *Pittman v. Moore*, 980 F.2d 994, 995 (5th Cir. 1993).

Allard claims that he filed this second suit to preserve a claim against Quinlan within Texas's two-year limitations period. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003 (2002). He argues that because the district court lacked jurisdiction to add Quinlan as a party in the days leading up to the limitations deadline, he was forced to bring a new––admittedly duplicative––suit to preserve a claim against the company. Given his procedural quandary, Allard contends, the district court should not have dismissed the 2005 lawsuit as malicious.

The district court relied on *Bailey v. Johnson*, 846 F.2d 1019 (5th Cir. 1988), in which we held it was not an abuse of discretion to dismiss a duplicative IFP claim against a prison doctor who was not named in an earlier lawsuit against prison officials and medical staff. In *Bailey*, however, the previous suit against prison officials had been dismissed following a *Spears* hearing in which the district court concluded that the medical care Bailey received was adequate. Specifically naming one of the doctors who had provided the care already found to be adequate, then, added nothing, and the second case was duplicative. Here, by contrast, the 2002 lawsuit was voluntarily dismissed following a settlement agreement, and there has been no finding as to whether Quinlan injured Allard by unlawfully spraying pesticides. Thus, the second case against Quinlan is not maliciously duplicative of the first case against the HCJ defendants.

In *Pittman*, 980 F.2d at 995, we held that a duplicative IFP suit should be dismissed as malicious to "insure that the plaintiff obtains one bite at the litigation apple––but not more." Because of the peculiar procedural circumstances in the 2002 lawsuit, Allard was not given a full bite at the apple with respect to Quinlan. Under the unique facts of this case, it was an abuse of discretion to de-

No. 08-10997

ny him that opportunity.

We do not imply that the claim is likely to succeed.[4] The district court may decide to dismiss it as frivolous or malicious or to dispose of it on the merits after Quinlan is served with process.

REVERSED and REMANDED.

---

[4] Indeed, we imagine that on remand the district court may want to examine some potentially fatal flaws in Allard's suit. To begin, Allard appears to be proceeding against Quinlan under 42 U.S.C. § 1983 without any explanation of how the company was a state actor when it sprayed the jail cells at HCJ.

Moreover, Allard may not have satisfied the two-year statute of limitations. He dates the accrual of his claim against Quinlan from March 25, 2003, when he claims to have been diagnosed with a thyroid condition. That would mean the statute of limitations ran on March 25, 2005. (In his brief, Allard incorrectly identifies his filing date as March 30, 2005, and the statute of limitations deadline as "April 2005." But the record shows that his second suit was filed on March 24, 2005.)

The only evidence proffered, however, to support that time line is an ambiguous prison medical record. Allard highlights a note on that record, which appears to read, "Init. thyroid ITP sched 3/25/03." That note, he claims, is proof that he was diagnosed with a thyroid condition on March 25, 2003. But on the same medical record, another entry dated "3-4-03" appears to contain precisely the same language about "ITP" and "thyroid."

5